## Fill in this information to identify your case:

Debtor 1: Gary Joseph Nichols
(First Name) (Middle Name) (Last Name)

Debtor 2: _____
(Spouse, if filing) (First Name) (Middle Name) (Last Name)

United States Bankruptcy Court for the: Northern District of Alabama

Case number: 25-82255
(If known)

# Official Form 427
## Cover Sheet for Reaffirmation Agreement
12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

### Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

1. **Who is the creditor?**
   Mahindra Finance USA LLC
   Name of the creditor

2. **How much is the debt?**
   On the date that the bankruptcy case is filed  $ 24,633.01
   To be paid under the reaffirmation agreement  $ 24,633.01
   $ 466.09 per month for 53 months (if fixed interest rate)

3. **What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**
   Before the bankruptcy case was filed  7.91 %
   Under the reaffirmation agreement  7.91 %  ☑ Fixed rate  ☐ Adjustable rate

4. **Does collateral secure the debt?**
   ☐ No
   ☑ Yes. Describe the collateral. Mahindra Tractor and Loader
   Current market value  $ _____

5. **Does the creditor assert that the debt is nondischargeable?**
   ☑ No
   ☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

6. **Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts.**

   Income and expenses reported on Schedules I and J | Income and expenses stated on the reaffirmation agreement

   6a. Combined monthly income from line 12 of Schedule I   $ 6399.33
   6e. Monthly income from all sources after payroll deductions   $ 6399.33

   6b. Monthly expenses from line 22c of Schedule J  − $ 6398.65
   6f. Monthly expenses  − $ 6398.65

   6c. Monthly payments on all reaffirmed debts not listed on Schedule J  − $ 0
   6g. Monthly payments on all reaffirmed debts not included in monthly expenses  − $ 0

   6d. Scheduled net monthly income  $ 0.68
   Subtract lines 6b and 6c from 6a.
   If the total is less than 0, put the number in brackets.
   6h. Present net monthly income  $ 0.68
   Subtract lines 6f and 6g from 6e.
   If the total is less than 0, put the number in brackets.

Debtor 1 __Gary Joseph Nichols__  Case number (if known) __25-82255__
First Name  Middle Name  Last Name

| | | |
|---|---|---|
| 7. Are the income amounts on lines 6a and 6e different? | ☑ No<br>☐ Yes. Explain why they are different and complete line 10. _____<br>_____ | |
| 8. Are the expense amounts on lines 6b and 6f different? | ☑ No<br>☐ Yes. Explain why they are different and complete line 10. _____<br>_____ | |
| 9. Is the net monthly income in line 6h less than 0? | ☑ No<br>☐ Yes. A presumption of hardship arises (unless the creditor is a credit union).<br>Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10.<br>_____<br>_____ | |
| 10. Debtor's certification about lines 7-9<br><br>If any answer on lines 7-9 is Yes, the debtor must sign here.<br><br>If all the answers on lines 7-9 are No, go to line 11. | I certify that each explanation on lines 7-9 is true and correct.<br><br>✗ _/s/ Gary Nichols_____  ✗ _____<br>Signature of Debtor 1   Signature of Debtor 2 (Spouse Only in a Joint Case) | |
| 11. Did an attorney represent the debtor in negotiating the reaffirmation agreement? | ☐ No<br>☑ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?<br>☐ No<br>☑ Yes | |

## Part 2: Sign Here

Whoever fills out this form must sign here.

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement*.

✗ _Meghan Reingardt_____  Date __12/12/2025__
Signature  MM / DD / YYYY

__Meghan Reingardt__
Printed Name

Check one:

☐ Debtor or Debtor's Attorney
☑ Creditor or Creditor's Attorney

Official Form 427  Cover Sheet for Reaffirmation Agreement  page 2

Check one.
☐ **Presumption of Undue Hardship**
☑ **No Presumption of Undue Hardship**
*See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
## Northern District of Alabama

In re Gary Joseph Nichols,
*Debtor*

Case No. 25-82255

Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** Mahindra Finance USA LLC

☐ Check this box if Creditor is a Credit Union

### PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: Equipment Loan
   *For example, auto loan*

B. ***AMOUNT REAFFIRMED***:   $ 24,633.01

   The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before 11/05/2025, which is the date of the Disclosure Statement portion of this form (Part V).

   *See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The ***ANNUAL PERCENTAGE RATE*** applicable to the Amount Reaffirmed is 7.9100 %.

   *See definition of "Annual Percentage Rate" in Part V, Section C below.*

   This is a *(check one)* ☑ Fixed rate    ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

- [ ] $_____ per month for _____ months starting on_____.

- [✔] Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.
  $396.33 due 12/15/2025; 52 remaining payments of 466.09 due the 15th of every month, stating 1/15/2026.

E. Describe the collateral, if any, securing the debt:

  Description: Mahindra Tractor and Loader
  Current Market Value $_____

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

- [✔] Yes. What was the purchase price for the collateral?   $        27,799.00

- [ ] No. What was the amount of the original loan?   $_____

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due (including fees and costs) | $ 24,633.01 | $ 24,633.01 |
| Annual Percentage Rate | 7.9100 % | 7.9100 % |
| Monthly Payment | $ 466.09 | $ 466.09 |

H. [ ] Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II.  DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

  Check one.  [✔] Yes    [ ] No

B. Is the creditor a credit union?

  Check one.  [ ] Yes    [✔] No

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1. Your present monthly income and expenses are:

   a. Monthly income from all sources after payroll deductions
   (take-home pay plus any other income)                              $ 6399.33

   b. Monthly expenses (including all reaffirmed debts except
   this one)                                                          $ ~~6274~~ 5933.24

   c. Amount available to pay this reaffirmed debt (subtract b. from a.)  $ 466.09

   d. Amount of monthly payment required for this reaffirmed debt     $ 466.09

   *If the monthly payment on this reaffirmed debt (line d.)* **is greater than** *the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

   Check one of the two statements below, if applicable:

   [✓] You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

   [ ] You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:




   Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

   [ ] You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

## PART III.  CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above.

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date  12/8/25          Signature  _[signed]_
                                      Debtor

Date  _____      Signature  _____
                                      Joint Debtor, if any

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor  Mahindra Finance USA LLC          PO Box 2000, Johnston, IA 50131
              *Print Name*                              *Address*

Meghan Reingardt            _Meghan Reingardt_            12/12/2025
*Print Name of Representative*        *Signature*              *Date*

## PART IV.  CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date  12/8/25   Signature of Debtor's Attorney  _[signed]_

                Print Name of Debtor's Attorney  Brandon Smith

# PART V.  DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A.  DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?**  A reaffirmed debt remains your personal legal obligation to pay.  Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages.  Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?**  No, you are not required to reaffirm a debt by any law.  Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?**  Your bankruptcy discharge does not eliminate any lien on your property.  A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed.  The property subject to a lien is often referred to as collateral.  Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt.  If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt.  To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?**  If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge.  After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible.  The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required.  However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?**  You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later.  To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled).  Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this Reaffirmation Agreement be effective?**

   a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

       i. **if the creditor is not a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

       ii. **if the creditor is a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement**, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B. **INSTRUCTIONS**

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 427).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home. You can use Form 2400B to do this.*

## C. DEFINITIONS

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

# RETAIL INSTALMENT CONTRACT AND SECURITY AGREEMENT (Consumer Use)

**MAHINDRA FINANCE USA LLC ("Assignee") 8001 BIRCHWOOD COURT, P.O. BOX 2000, JOHNSTON, IA 50131**     Case ID: ▉

| BUYER | | | SELLER | |
|---|---|---|---|---|
| CONTRACT NUMBER | ▉ | | DEALER CODE | 009907.E600 |
| NAME | GARY NICHOLS | | CONTRACT DATE | 04/15/2023 |
| ADDRESS | 2707 COUNTY ROAD 1043 | | NAME | FREDRICKS EQUIPMENT INC |
| CITY & STATE | CULLMAN, AL | | ADDRESS | 110 SMITHSON DRIVE |
| ZIP CODE | 35057-5503 | TELEPHONE NO. ▉ | CITY & STATE | HARTSELLE, AL |
| EMAIL ADDRESS | ▉ | | ZIP CODE | 35640 |

## PAYMENT SCHEDULE – EQUAL MONTHLY PAYMENTS:

| Number of Payments | Amount of Each Payment | When Payments are Due | MAKE PAYMENTS TO: |
|---|---|---|---|
| 84 | $466.09 | 15th of each month, beginning on 05/15/2023 | MAHINDRA FINANCE USA LLC<br>P.O. Box 77114<br>Minneapolis, MN 55480-7702 |

**DESCRIPTION OF PURCHASED MACHINERY/COLLATERAL:** *Note*: Machinery described below as "New" does not necessarily mean the Machinery was manufactured in the current year.

| NEW/ USED | MAKE AND MODEL NUMBER | SERIAL NUMBER | DESCRIBE PROPERTY PURCHASED | CASH PRICE |
|---|---|---|---|---|
| New | Mahindra 1626S | 26G220428717 | TRACTOR | $ 20,800.00 |
| New | Mahindra 1626L | 22L6783 | Loader | $ 6,999.00 |

**DESCRIPTION OF TRADE-IN MACHINERY:** Except as otherwise disclosed below, Buyer represents and warrants that trade-in property is free and clear of all security agreements, liens and encumbrances.

| MAKE AND MODEL NUMBER | SERIAL NUMBER | TRADE-IN ALLOWANCE | LESS OWING | NET TRADE-IN |
|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A |

| ANALYSIS OF SALE | | |
|---|---|---|
| Cash Price | 1. | $27,799.00 |
| Sales Taxes | 2. | $660.23 |
| **Total Cash Price (1+2)** | 3. | $28,459.23 |
| Cash Down Payment | 4. | $800.00 |
| Net Trade-In | 5. | $0.00 |
| **Total Down Payment (4+5)** | 6. | $800.00 |
| **Unpaid Balance of Total Cash Price (3-6)** | 7. | $27,659.23 |
| Other Charges: | | |
| a. Physical Damage Insurance | 8. | $2,335.12 |
| b. Filing Fees | 9. | $0.00 |
| c. Other (describe: OTHER FEE) | 10. | $0.00 |
| **Total Other Charges (8+9+10)** | 11. | $2,335.12 |
| **Prepaid Finance Charge** | 12. | $150.00 |
| **Amount Financed** (Basic Time Price) **(7+11)** | 13. | $29,994.35 |
| **FINANCE CHARGE** (Time-Price Differential) | 14. | $9,157.21 |
| **Total of Payments** (Time-Price Balance) (13+14) | 15. | $39,151.56 |
| **Total Sale Price (3+11+14)** | 16. | $39,951.56 |
| **ANNUAL PERCENTAGE RATE** | 17. | 7.91% |

**Insurance.** By signing below, Buyer ☑ does or ☐ does not elect to obtain physical damage insurance for the Machinery through a group policy arranged by Assignee. By signing directly below, Buyer acknowledges having read the accompanying Customer Agreement to Provide Physical Damage Insurance, Buyer understands the terms contained therein and represents that information contained therein related to Buyer is true and correct. N*ote: Your signature is also required following the "Notice to Buyer" section to show your agreement to the terms of the Contract.*

## **NOTICES TO BUYER**

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

Buyer's Signature: ▶ *Gary Nichols* (DocuSigned: DC6A3573CE22436...)

*For additional terms, conditions and disclosures that are included in this agreement, please see the pages that follow, including the "Truth-in-Lending Act Disclosures."*

Pursuant to the terms of this contract (this "Contract"), the undersigned Buyer (if more than one, jointly and severally), hereby purchases the property described above (the "Machinery") from the undersigned Seller for the Total Sale Price indicated in the Analysis of Sale, subject to the terms and conditions hereunder and on the pages that follow and promises to make the Total of Payments as set forth above.

The Finance Charge is determined in advance assuming an annual interest rate of 7.75% beginning on 04/15/2023.

**Assignment.** Following assignment of this Contract, all references to "Seller" in this Contract shall be deemed references to "Assignee." Buyer acknowledges that Seller is not the agent of Assignee, that any representations or warranties made by Seller are not binding on Assignee, and that Seller does not have the authority to modify any term or provision of this Contract subsequent to assignment of this Contract.

**By signing below, Buyer acknowledges that he/she has read and received a filled-in copy of this Contract, Assignee's Privacy Notice and the Truth-in-Lending Act Disclosures and understands all terms.**

| BUYER | | | SELLER | | | |
|---|---|---|---|---|---|---|
| Buyer's Name: GARY NICHOLS | | | Seller's Name: FREDRICKS EQUIPMENT INC | | | |
| Signature: *Gary Nichols* (DC6A3573CE22436...) | | 5/2/2023 | Signature: *Greg Brown* (7DF851304F94D2...) | | | 5/2/2023 |
| Gary Nichols | | Date | Greg Brown | | F&I | 5/2/2023 |
| Print Name | | Date | Print Name | | Title | Date |

**PLEASE SEE ADDITIONAL TERMS AND CONDITIONS ON THE FOLLOWING THREE PAGES.**

**ADDITIONAL TERMS AND CONDITIONS**

1. **Precomputed Contract.** This is a precomputed contract. This means that the Total of Payments is computed in advance assuming all payments are made when due. The Total of Payments is comprised of the Amount Financed and the Finance Charge. The Finance Charge includes the prepaid finance charge, if any. The Finance Charge is determined in advance assuming an annual interest rate of  7.75 % beginning on 04/15/2023.
2. **Administration Fee.** Buyer agrees to pay a fee of $150.00. Buyer understands that Assignee is paid $150.00 of the fee and Seller retains the rest and that Assignee and Seller may make a profit on this fee. Seller has disclosed this amount as a Prepaid Finance Charge as required by law.
3. **Late Payments.** Each payment past due more than 10 days shall be subject to a late charge as set forth in the Truth-in-Lending Act Disclosures; *provided, however,* in no event shall late charges exceed the maximum amount allowed by applicable law.
4. **Dishonored Payments.** In the event any check or other form of payment made by Buyer is returned for any reason, unless prohibited by applicable law, Buyer agrees to pay Seller upon demand the lesser of $40 or the maximum amount permitted by law.
5. **Prepayment.** Buyer may prepay its obligation in full at any time prior to maturity without a prepayment penalty. Buyer may be entitled to a refund of the unearned portion of any finance charge calculated according to the actuarial method or as otherwise required by law; provided, however, that no refund will be made if it is less than $1, unless required by applicable law.
6. **Delivery and Acceptance:** Buyer acknowledges receipt of the Machinery in good order and condition and, to the extent permitted by applicable law, waives any and all rights Buyer may have to rescind this Contract, reject the Machinery or revoke acceptance of the Machinery.
7. **Disclaimer of Warranties. BUYER ACCEPTS THE MACHINERY IN ITS AS-IS, WHERE-IS CONDITION WHEN DELIVERED AND ACKNOWLEDGES THAT NO WARRANTY, EITHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, IS PROVIDED BY SELLER OR ASSIGNEE TO BE APPLICABLE TO THIS CONTRACT OR THE MACHINERY.**
8. **Grant of Security Interest under the Uniform Commercial Code.** In order to secure payment of the indebtedness contained herein and for all other amounts due or to become due hereunder and for each and every other obligation now or hereafter owing by Buyer to Seller and/or Assignee, the undersigned Buyer hereby grants to Seller a security interest in the Machinery, including the proceeds thereof, together with all repairs, replacements and accessions now or thereafter appertaining thereto until all indebtedness is paid in full. Buyer authorizes Seller to file, at Buyer's expense unless prohibited by law, financing statements with respect to the Machinery and hereby ratifies and approves any financing statement filed prior to the date of this Contract. Buyer hereby appoints Seller (which Seller may act by or through Assignee or Assignee's servicer) as Buyer's attorney-in-fact to do all acts or things which Seller may deem necessary to protect the title and interest hereunder of Seller and Assignee. This power of attorney is coupled with an interest and is irrevocable. If the Machinery is subject to any certificate of title act, Buyer shall immediately apply for/obtain certificate(s) of title and registration for each item of property being purchased. Each certificate shall include listing of a lien in the amount of the Total Sale Price, name Assignee or such other person as Seller shall direct in writing as lienholder and Buyer shall provide Seller with evidence of the continuing effectiveness of such lien as may be reasonably requested from time to time. In addition, Buyer shall deliver or cause to be delivered to Seller the original certificate(s) of title for each item of such property.
9. **Assignment; Acknowledgements of Buyer.** Buyer may not assign this Contract without Seller's prior written consent. No assignment or extension hereof or of any interest herein, or loss, injury or destruction of Machinery shall release Buyer from its obligations hereunder. Seller may assign this Contract in whole or in part and Assignee shall succeed to all Seller's rights hereunder. Buyer's obligation to pay directly to Assignee any amounts payable hereunder is absolute and unconditional under all circumstances and is not subject to any abatement, reduction, setoff, recoupment, claim, defense or counterclaim of any kind or for any reason whatsoever. Buyer shall not assert against Assignee any claim, defense, setoff, reduction, dispute, recoupment or counterclaim of any kind or for any reason whatsoever which Buyer may have against the manufacturer of the property. **IN NO CASE SHALL SELLER OR ASSIGNEE BE LIABLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES BASED UPON ANY LEGAL THEORY, INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS, LOSS OF USE OF THE MACHINERY, THE CLAIMS OF THIRD PARTIES AND INJURY TO THE MACHINERY.** Buyer further acknowledges each of the following (a) Assignee is not the manufacturer of the Machinery or the manufacturer's agent or a dealer therein; (b) the Machinery is of a size, design, capacity, description and manufacturer selected by Buyer; (c) Buyer is satisfied that the Machinery is fit for Buyer's purposes; (d) Assignee has no knowledge or information regarding the condition or suitability of the Machinery for Buyer's purposes; and (e) Assignee has relied upon Buyer's warranties, agreements and covenants herein.
10. **Representations, Warranties and Covenants.** Buyer represents, warrants and covenants that: (a) the trade-in property, if any, is free and clear of all security agreements, liens and encumbrances; (b) this Contract is a legal, valid and binding obligation of Buyer and is enforceable against Buyer in accordance with its terms; (c) Buyer will comply in all respects with all Federal, state and local laws and regulations the violation of which could have a material adverse effect upon the Machinery or Buyer's performance of its obligations under this Contract; (d) Buyer will provide to Seller such other information and documents as Seller may reasonably request; and (e) the Machinery is tangible personal property and will not be attached or affixed to real property in any manner. Buyer's representations, warranties and covenants shall survive termination of this Contract and Buyer agrees to indemnify and hold Seller and/or Assignee harmless from all claims, damages, losses and expenses, including reasonable attorneys' fees, resulting from breach of any of the foregoing.
11. **Use, Location and Maintenance of Machinery.** Buyer shall keep the Machinery free of all liens, taxes, encumbrances and seizure or levy. Buyer shall not use the Machinery illegally or damage, abuse, misuse, abandon or lose the Machinery. Buyer shall not sell, lease, rent, abandon, transfer, or otherwise dispose of any interest in the Machinery and shall not move it outside of the contiguous 48 states of the United States. Buyer shall notify Seller of each change in the place where the Machinery is located or used and of any change in the state of Buyer's location (as such term is defined in the Uniform Commercial Code) not more than 20 days following each change in location. Seller may, at any time before or after default, enter any premises under Buyer's control to inspect the Machinery.
12. **Insurance.** Buyer agrees to maintain physical damage insurance, in amounts and types as Seller may require, at all times with respect to the Machinery. In addition, the terms and periods of coverage shall be satisfactory to Seller, but may be obtained through a person of Buyer's choice. Such insurance shall provide Seller with 10 days advance notice of cancellation and name Seller as a loss payee through a Lender's Loss Payable Clause which is a clause that provides that any acts by Buyer will not void the policy as to Seller. Buyer agrees to furnish Seller with evidence of insurance coverage, satisfactory to Seller, within 15 days of the date of this Contract. If Buyer fails to deliver such evidence, or should the insurance be cancelled or allowed to lapse before full payment of this Contract, Seller may, but shall not be obligated to, purchase or otherwise provide such insurance and Buyer agrees to reimburse Seller for the cost of such insurance. Buyer acknowledges that Seller may make a profit on insurance purchased by Seller to insure the Machinery, unless prohibited by law. Except as may otherwise be separately agreed, neither Seller nor Assignee shall have any responsibility to Buyer for the cost or appropriateness of the premium for any insurance, the creditworthiness of any insurance company, the rebate or refund of any insurance premium to which Buyer may be entitled, unless otherwise required by law, or any other matter relating to any physical damage insurance even if any insurance was provided through a group policy arranged by Assignee or any insurance premium was financed by Assignee. Buyer acknowledges that Seller and/or Assignee may make a profit on insurance purchased by Seller or Assignee. Any insurance provided through a group policy arranged by Assignee would be a dual interest physical damage insurance policy that would provide coverage in accordance with the policy's terms on the Machinery to protect Buyer's interest in the Machinery as owner and Assignee's interest in the Machinery as a lender and secured party. The term of the insurance would coincide with the term of the Contract. **There is no insurance coverage for personal liability, bodily injury or property damage caused to others.**
13. **Default; Remedies.** Each of the following is a "Default" under this Contract: (a) Buyer fails to make any Payment or any other obligation when due under this Contract or in any other agreement with Seller, Assignee, or with any of their affiliates or related parties; (b) any representation or warranty made by Buyer proves to be incorrect in any material respect when made; or (c) Buyer becomes insolvent, is generally unable to pay its debts when due, dies, assigns its assets for the benefit of its creditors, or becomes the subject of a bankruptcy, receivership, or insolvency proceeding; provided the defaults described in subclauses (b) and (c) will be a "Default" only if the Seller's prospect of payment, performance, or ability to realize upon the Machinery is significantly impaired. In the event of a Default or an event which, with the passage of time, would constitute a Default hereunder, Seller, at its option, may, subject to any notice and right to cure or right to reinstatement afforded under applicable law: (a) terminate this Contract; and/or (b) retain all payments heretofore made by Buyer and declare all indebtedness hereunder, less unearned finance charges, immediately due and payable and Seller shall have all the rights and remedies of a Secured Party under the Uniform Commercial Code and may, without notice, enter any premises where the Machinery may be and, unless prohibited by law, take possession thereof and remove the same, together with replacements and accessories, or Seller may require Buyer to assemble the property and make it available at a place designated by Seller, all without resort to judicial process. In the event Seller seeks to take possession of any or all of the Machinery by court process, Buyer further irrevocably waives to the fullest extent permitted by law any bonds and any surety or security relating thereto required by any statute, court rule or otherwise as an incident to such possession and said retaking shall not be deemed rescission of this Contract. Further, to the extent permitted by law, Buyer waives all notices and delays if required by law. Buyer will be given a right of redemption. Seller may resell the Machinery at public or private sale with notice to

Buyer and the proceeds of any such sale (less reasonable expenses of retaking, repairing, holding, preparing for sale, selling and the like, including reasonable attorney's fees and legal expenses to the maximum extent permitted by applicable law) shall be credited upon the amount unpaid. Subject to the limitations of state law, Buyer agrees to pay any deficiency upon demand by Seller, any surplus, however, shall be paid to Buyer. Seller may accept partial payments of any sums due herein without waiving or otherwise modifying the terms of this Contract. Waiver by Seller of any Default shall not be deemed a waiver of any other Default. Unless prohibited by applicable law, Buyer agrees to pay all collection and repossession costs, reasonable attorneys' fees, legal expenses and court costs incurred in connection with any Default.

14. **Governing Law; Severability; Waiver of Jury Trial.** The law of the state of Buyer's address shown on the first page hereof shall govern all matters relating to the validity, effect and enforcement of this Contract. Any provision hereof invalid in any state shall be inoperative as to such state, but without invalidating the remaining provisions hereof. **Unless prohibited by applicable law, Buyer expressly waives its right to a trial by jury.**

15. **No Modification; Insertion of Serial Numbers and Model Numbers and Corrections of Errors and Information.** No modification or addition to this Contract shall be effective unless agreed upon in writing by the parties. Notwithstanding the foregoing, Buyer authorizes Seller to insert in this Contract the serial number and/or model numbers of the Machinery if unknown at the time this Contract is executed, correct any errors in such numbers reflected in this Contract at the time this Contract is executed and correct any other patent errors in the description of the Machinery reflected in this Contract at the time this Contract is executed, to fill in blanks existing in this Contract at the time this Contract is executed unless prohibited by law, and to correct any patent errors in this Contract.

16. **Credit Information; Communication with Buyer.** Buyer authorizes Seller to obtain credit bureau reports and make other credit inquiries that Seller determines are necessary, without notice to Buyer, to update its information so long as Buyer has any outstanding indebtedness or obligations owed to Seller or Assignee. Buyer providing its email address and/or telephone number in this Contract or otherwise is Buyer's acknowledgment that Seller may retain Buyer's email address and/or telephone number for further communication with Buyer. Buyer agrees to allow Seller to conduct business with Buyer using email or by calling Buyer, regardless of the purpose of Seller's communication, which may include, without limitation, collections and notices under Buyer's agreements with Seller and/or Assignee. Seller reserves the right to use the method of communication it deems best in interacting with Buyer.

17. **Application of Payments.** Unless otherwise required by applicable law, payments received may be applied at Seller's discretion to obligations hereunder or to any other indebtedness owed by Buyer to Seller despite directions, if any, appearing on the remittance.

18. **Processing Fee.** If Buyer requests to make or authorize a payment via phone, electronically or similarly through Seller, unless otherwise prohibited under applicable law, Buyer agrees to pay all third party expenses associated with processing the payment in addition to a processing fee to Seller in the amount of the lesser of $10 or the maximum amount allowed by applicable law, on which Seller may make a profit.

19. **Miscellaneous.** This Contract contains all the terms and conditions agreed to by the parties with respect to financing the purchase of the Machinery. This Contract may be executed and accepted by Seller in any number of counterparts, including facsimile or electronic mail counterparts. Buyer agrees that a copy of this Contract bearing a signature of Buyer which was transmitted by facsimile or printed from an electronic file shall be admissible in any legal proceeding as evidence of its contents and its execution by the parties in the same manner as an original document. Buyer further agrees to not object to the admissibility of a copy of this Contract bearing a signature of Buyer into evidence under the business records exception to the hearsay rule or based on the best evidence rule or otherwise and expressly waives any right to do so. Notwithstanding the fact that this Contract may be executed in more than one counterpart, the sole execution original of this Contract for purposes of taking possession of this Contract, including without limitation taking possession under UCC 9-330, shall be either: (a) the original of this Contract which bears an original signature of each party to this Contract and which bears the original signature of Assignee accepting the assignment of this Contract or (b) the facsimile, electronic or other counterpart copy of this Contract signed by the parties and bearing the original signature of Assignee accepting the assignment of this Contract. Assignee may require manual original signature(s) in its sole discretion.

| SELLER'S ASSIGNMENT | | | |
|---|---|---|---|
| For value received, Seller hereby sells, assigns, and transfers to MAHINDRA FINANCE USA LLC ("Assignee"), all of Seller's right, title, and interest in and to the within Contract and all rights thereunder, together with all Seller's right, title and interest in and to the Machinery therein described, subject to the terms more fully set out in Seller's Retail Financing Agreement or the terms of a separate assignment between Seller and Assignee, such assignment to be accepted by Assignee only at its office in Johnston, Iowa. | | | |
| 5/2/2023<br>Date | FREDRICKS EQUIPMENT INC<br>Seller's Name | By: | *Greg Brown*<br>07DF851304F94D2...<br>Authorized Signature |

| ASSIGNEE ACCEPTANCE | | | |
|---|---|---|---|
| Assignee hereby accepts Seller's assignment of the within Contract in Johnston, Iowa. | | | |
| 5/9/2023<br>Date | MAHINDRA FINANCE USA LLC | By: | *Wendy Warren*<br>C036C42D72E54B2...<br>Authorized Signature | Des Moines Contract Admin |

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

# TRUTH-IN-LENDING ACT DISCLOSURES

| Seller/Creditor: | FREDRICKS EQUIPMENT INC | Buyer: | GARY NICHOLS |
| --- | --- | --- | --- |
| Date: | 04/15/2023 | Second Buyer: | N/A |

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 800.00 |
| --- | --- | --- | --- | --- |
| 7.91 % | $ 9,157.21 | $ 29,994.35 | $ 39,151.56 | $ 39,951.56 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due |
| --- | --- | --- |
| 84 | $466.09 | 15th of each month, beginning on 05/15/2023 |
| N/A | N/A | N/A |
| N/A | N/A | N/A |

**SECURITY:** You are granting a security interest in the property being purchased.

**FILING FEES:** $ 0.00

**LATE CHARGE:** If a payment is late beyond any applicable grace period in the contract or required by law, you will be charged a late fee in the amount of 5% of the late instalment or $18, whichever is greater, but not to exceed $100 or as otherwise allowed or prescribed by law.

**PREPAYMENT:** If you pay off early, you may be entitled to a refund of part of the Finance Charge.

**OTHER TERMS:** See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment.

Itemization of the Amount Financed of  $  29,994.35

| | |
| --- | --- |
| Toward Purchase Price | $ 27,659.23 |
| Amounts paid to others on my behalf: | |
| * to public officials | $ 0.00 |
| * to insurance companies | $ 2,335.12 |
| * to   N/A | $ 0.00 |
| * to   N/A | $ 0.00 |
| **Prepaid Finance Charge** | $ 150.00 |

### INSURANCE

Property insurance is required. You may obtain required property insurance through anyone acceptable to the Seller/Creditor or its assignee. If you have chosen to obtain property insurance through the Seller/Creditor or its assignee, the premium will be as disclosed above.

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Alabama (S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME:

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| NICHOLS | GARY | JOSEPH | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2707 COUNTY ROAD 1043 | CULLMAN | AL | 35057-5503 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME:

OR

2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME: **Mahindra Finance USA LLC**

OR

3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. BOX 2000 | JOHNSTON | IA | 50131-0020 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
Mahindra 1626S TRACTOR, Mahindra 1626L Loader

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Case 25-82255-CRJ7   Doc 16   Filed 12/12/25   Entered 12/12/25 15:15:24   Desc Main
Document      Page 14 of 15

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
CSC     800-858-5294

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

CSC
801 Adlai Stevenson Drive
Springfield, IL 62703
USA

Alabama Sec. Of State
B 23-7200178 FS
Date 05/03/2023
Time 08:34 AM
230503 1 Pg
File $15.00
Access $9.75
Conv $4.50
Total $29.25
8719862

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| NICHOLS | GARY | JOSEPH | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2707 COUNTY ROAD 1043 | CULLMAN | AL | 35057-5503 | USA |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME
Mahindra Finance USA LLC

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. BOX 2000 | JOHNSTON | IA | 50131-0020 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

Mahindra 1626S TRACTOR, Mahindra 1626L Loader

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)